**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:13-CV-320-GCM-DCK**

| | |
|---|---|
| **CARLTON L. ELROD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 9) and "Defendant's Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Carlton L. Elrod ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On November 30, 2010, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning September 24, 2010. (Transcript of the Record of Proceedings

("Tr.") 11, 33, 140).[1] The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about March 16, 2011, and again after reconsideration on or about October 4, 2011. (Tr. 11, 62, 76, 92, 100). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. Though you would be unable to meet the functional demands of your past jobs as a cook as you have described it, other information shows that you retain the functional capacity to meet the functional demands of this job as it is generally performed. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 100).

Plaintiff filed a timely written request for a hearing on October 26, 2011. (Tr. 11, 110). On April 27, 2012, Plaintiff appeared and testified at a hearing before Administrative Law Judge Charles R. Howard ("ALJ"). (Tr. 11, 29-61). In addition, Kathleen H. Robbins, a vocational expert ("VE"), and Holly Fairbairn, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on July 5, 2012, denying Plaintiff's claim. (Tr. 8-24). Plaintiff filed a request for review of the ALJ's decision on September 4, 2012, which was denied by the Appeals Council on October 10, 2013. (Tr. 1-3, 7). The July 5, 2012 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

---

[1] Plaintiff contends that he also sought Disability Insurance Benefits under Title II of the Social Security Act; however, that contention does not appear to be supported by the record. (Document No. 9-1, p.5). See also (Tr. 11, 92, 100, 140).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 9, 2013. (Document No. 1). On January 2, 2014, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 9) and "Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 9-1) were filed April 28, 2014; and "Defendant's Motion For Summary Judgment" (Document No. 12) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 12-1) were filed July 28, 2014.

On August 14, 2014, Plaintiff filed a "Notice Of Intent Not To Respond" (Document No. 14) confirming that Plaintiff did not intend to file a response to Defendant's arguments in support of summary judgment. As such, the pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more

than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 24, 2010, and the date of the ALJ's decision.[2] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 23).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 24, 2010, his alleged disability onset date. (Tr. 13). At the second step, the ALJ found that osteoarthritis lumbar spine, reactive airway disease, and affective disorder and borderline intellectual functioning were severe impairments.[3] (Tr. 13). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 14).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

> he can only perform work tasks with no concentrated exposure to pulmonary irritants. He is precluded from climbing ladders, ropes or scaffolds and can only occasionally perform activities including climbing of ramps or stairs, stooping, kneeling, crouching or crawling. He can perform and maintain concentration for simple, routine and repetitive tasks, can adapt to routine changes in a work setting, is limited to work that requires no more than occasional public interaction and to work that does not require literacy.

(Tr. 15). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 16). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as: a prep cook/restaurant/dishwashing, intake worker at Salvation Army, roofer helper, mechanic helper, assembly plant worker with trimming, building maintenance/cleaning, and fence builder/barbed wire. (Tr. 22).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included representative occupations such as: building cleaner (4,000 in North Carolina and 131,000 nationally), and car wash attendant (1,200 in North Carolina and 45,900 worldwide). (Tr. 23). Therefore, the ALJ concluded that Plaintiff was not

6

under a "disability," as defined by the Social Security Act, at any time between September 24, 2010, and the date of his decision, July 5, 2012. (Tr. 23-24).

Plaintiff on appeal to this Court alleges the ALJ erred: (1) determining the severity of Plaintiff's impairments; (2) assessing Plaintiff's credibility; (3) weighing opinion evidence; (4) evaluating Plaintiff's literacy; and (5) determining Plaintiff's residual functional capacity. (Document No. 9-1, p.6). The undersigned will discuss each of these contentions in turn.

**A.    Severity of Impairments**

In his first assignment of error, Plaintiff argues that in addition to the impairments that the ALJ found to be severe – osteoarthritis lumbar spine, reactive airway disease, and affective disorder and borderline intellectual functioning – the ALJ should have *also* found conditions related to hypertension, left lateral epicondylitis, and perineural fibrosis to constitute severe impairments. (Document No. 9-1, pp.7-8). The undersigned finds Defendant's arguments that the ALJ decision regarding severe impairments is supported by substantial evidence to be persuasive. (Document No. 12-1, pp.3-5).

   1.  Hypertension

Plaintiff begins by arguing that the ALJ improperly found hypertension to be non-severe (Document No. 9-1, p.7). Defendant asserts that the ALJ found this condition to be non-severe because: medical records addressed it as "benign essential hypertension"; Plaintiff received medical management with anti-hypertensive and diuretic medications; Plaintiff had had no hypertensive crisis; and the medical record did not document a chronic hypertensive process or the imposition of significant limitation or restriction. (Document No. 12-1, pp.3-4) (citing Tr. 13; see Tr. 292, 621, 622, 624, 634, 636, 637).

Defendant notes Plaintiff's argument that hypertension was listed as an active problem many times, and that medication was prescribed; however, Defendant argues that the ALJ acknowledged these factors, while Plaintiff fails to acknowledge that his hypertension was often described as "benign." (Document No. 12-1, p.4); see also (Tr. 13). Defendant further notes that "there is no indication that the ALJ found Plaintiff was either not taking his medications or that his condition would improve if he did take his medications; to the contrary, the ALJ's rationale was that his condition did not present any apparent limitations." Id. (citing Tr. 13).

Plaintiff contends that Plaintiff's hypertension was in fact in crisis, citing two hospitalizations from January 2008 (over two years *prior* to the alleged onset date), and one hospitalization on November 3, 2011. (Document No. 9-1, p.7) (citing Tr. 387-392, 493-537). However, Defendant notes that when Plaintiff was hospitalized in January 2008, he presented with shortness of breath and was diagnosed with bronchitis (and asthma) – while hypertension was also noted as a diagnosis, there is no indication that it was the reason for his hospitalization. (Document No. 12-1, p.4) (citing Tr. 387-393). Similarly, hypertension was not implicated as the reason for Plaintiff's November 3, 2011 hospitalization, but rather, he had developed epigastric pain after eating, and was diagnosed with diarrhea, gastroesophageal reflux, and vomiting. Id. (citing 494, 496). Plaintiff was described as "slightly hypertensive" and later, hypertension was listed as a secondary diagnosis. Id. (citing 523); see also (Tr. 494).

Defendant further argues that Plaintiff does not identify any functional limitations of any source associated with hypertension, but instead speculates that "the kind of symptom that merits a person a hospitalization" is "more than a *de minimus* effect from hypertension," which is "suggestive of unreliability to work a schedule." (Document No. 12-1, pp.4-5) (citing Document No. 9-1, pp.7-8). In conclusion, Defendant re-asserts that Plaintiff's hospitalizations were not

8

due to hypertension, and even if they were, it is unclear how two brief hospitalizations over the course of more than three years are suggestive of an unreliability to adhere to a work schedule. (Document No. 12-1, p.5).

2. Left Lateral Epicondylitis

Next, Plaintiff suggests that left lateral epicondylitis should have been found to be a severe impairment, but declines to cite any specific evidence that such condition significantly impaired his ability to do basic work activities. (Document No. 9-1, p.8). Defendant's brief effectively addresses Plaintiff's argument as follows.

Plaintiff references the consultative examinations by Stephen Burgess, M.D., Ph.D., in February and September 2011, who observed some tenderness to palpation over the lateral epicondyle, and diagnosed left elbow pain, likely lateral epicondylitis. (Document No. 12-1, p.5) (citing Document No. 9-1, p.8; Tr. 275, 276, 302, 304). Dr. Burgess clarified that the symptoms from this condition appeared to be sub-acute. Id. (citing Tr. 277). Plaintiff states, without any citation, that this condition affects lifting, carrying, pushing, and pulling, and that the corresponding pain would affect the full range of mental capacity. Id. (citing Document No. 9-1, p.8). However, in referencing the opinions from Dr. Burgess, Plaintiff tacitly acknowledges that the ALJ accounted for left lateral epicondylitis, as the ALJ gave these opinions great weight. Id. (citing Tr. 21). This condition was also considered by the State agency medical consultants, whose opinions the ALJ also gave some weight, thus further establishing that this condition was accounted for. Id. (citing Tr. 21, 65, 66, 69, 81, 82, 85).

3. Perineural Fibrosis

Plaintiff also suggests that perineural fibrosis of the right inguinal nerve as a residual of right inguinal hernia repair should have be found as severe. (Document No. 9-1, p.8) (citing Tr.

402, 407). However, Defendant notes that the evidence Plaintiff himself cites to establish this condition explains that the nerve tissue was only mildly distorted and without significant inflammation. (Document No. 12-1, p.5) (citing Tr. 407). Though Plaintiff cites some records indicating trouble moving and discomfort with his right leg, none of these records link these complaints to perineural fibrosis. (Document No. 12-1, pp.5-6) (citing Tr. 435, 443, 449). Defendant concludes that Plaintiff has thus failed to show that the ALJ erred in not finding this condition to constitute a severe impairment. Id.

Defendant further argues that "even assuming, *arguendo*, that these other conditions should have been assessed as severe impairments, any error is harmless because the ALJ proceeded through the sequential evaluation process." (Document No. 12-1, p.3) (citing Stacey v. Astrue, 2011 WL 841356, at *3 (W.D.N.C. Jan. 28, 2011), adopted by 2011 WL 873463 (W.D.N.C. March 7, 2011) (holding that an error at step two is harmless as long as the ALJ proceeds to step four)).

**B.     Credibility**

Next, Plaintiff challenges that "the ALJ's credibility assessment did not comply with regulation, and was not supported by substantial evidence." (Document No. 9-1, pp.8-13).

Although under a heading addressing the credibility assessment, Plaintiff first devotes significant energy to arguing that the ALJ's "decision suffers errors of omission and analysis beyond what should be acceptable in deference to an ALJ" and that the "ALJ impermissibly paraphrased the Plaintiff's testimony about the predominance of his back symptoms, and limitations on sitting, walking, postural and lifting." (Document No. 9-1, pp.8-11). It is unclear to the undersigned how the alleged omissions and paraphrasing support Plaintiff's argument that

the ALJ erred in his credibility assessment. Rather, Defendant's argument that the ALJ sufficiently discussed the pertinent evidence is compelling. In particular, Defendant argues:

> Plaintiff provides no authority requiring an ALJ to fully incorporate a claimant's testimony into his decision to support this argument. This Court has recognized that "[t]he failure to discuss every specific piece of evidence 'does not establish that he failed to consider it.'" *Mitchell v. Astrue*, No. 2:11-cv-56-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (quoting *Elias v. Astrue*, No. 3:07-CV-43, 2008 WL 191662, at *21 (N.D. W.Va. Jan. 22, 2008)). What is material is that the ALJ acknowledged that Plaintiff's testimony included allegations of debilitating pain manifestation and serious functional deficit (indicating he was aware of and considered this testimony) which, if *fully* credited, could preclude the performance of substantial gainful activity (*see* Tr. 16). The ALJ explained how he chose to partially (*see* Tr. 16-17), but not fully (*see* Tr. 20), credit these allegations, which, in addition to consideration of the opinion evidence, allowed him to determine his RFC finding. It is unclear how any more specific discussion of the precise limitations Plaintiff alleged would have altered the ALJ's decision.

(Document No. 12-1, p.10).

Consistent with Defendant's argument above, the undersigned is not persuaded that the ALJ's failure to cite certain specific facts in his decision necessarily means he did not consider such evidence, or that his credibility assessment is not supported by substantial evidence.

Later, Plaintiff argues that the ALJ's credibility finding was "reached through an improper standard and unsupported by substantial evidence," and that the ALJ "failed to build the required logical bridge between the evidence he recited, and his conclusion against credibility." (Document No. 9-1, p.12). Plaintiff asserts that

> if properly credited, Plaintiff's testimony demonstrated that he could not maintain the attendance standards of competitive employment. He testified that incapacitating back pain takes him out of commission ("wouldn't even get out of the house") twice a month [T. 47, 49], and that lack of sleep due to pain caused him to nap or get "off [his] feet" a couple of hours at a time [T. 48], and

      that once a week uncontrollable anger at others caused him to walk
      off to avoid hitting them and going to jail [T. 46-7].

Id.

  Defendant contends that in evaluating credibility, "the ALJ partially credited several of his complaints beyond what was supported by the objective medical evidence (*see* Tr. 17-18), but found that his allegations were not consistent with the record as a whole, including the medical evidence, as well as evidence of his activities of daily living (*see* Tr. 16-20)." (Document No. 12-1, p.6).

  Defendant argues that the ALJ applied the correct standards in the evaluation of credibility. Id. Specifically, Defendant observes that the ALJ's decision discussed the sequential evaluation process, and went through each step in the process. (Document no. 12-1, p.7) (citing Tr. 11-13, 13-20). Defendant also asserts that even if the ALJ decision included allegedly "boilerplate" language, the mere presence of such language does not invalidate the findings where, as here, the ALJ discussed his credibility analysis. (Document No. 12-1, pp.7-8).

  The Court further observes that the substantial evidence in the record appears to support a finding that Plaintiff was less than fully credible. For example, the underlying "Disability Determination Explanation(s)" both determined that Plaintiff was "partially credible." (Tr. 68, 84). Significantly, consultative examiner Stephen Burgess, MD ("Dr. Burgess") in separate opinions determined that Plaintiff's insight and description of his limitations were "somewhat consistent" and "relatively consistent" with the objective findings. (Tr. 277, 304).

  In short, the undersigned is not persuaded that the ALJ erred in his credibility assessment.

**C.**   **Medical Opinion Evidence**

  Plaintiff also alleges that the ALJ erred in weighing opinion evidence. (Document No. 9-1, pp.13-22).

1. Physical Medicine Opinions

First, Plaintiff asserts that the weight afforded the "physical medicine opinions" was improper. Id. at pp.13-15). Plaintiff argues that the attribution of "great weight" to the opinions Dr. Burgess, and "some" weight to the State Agency physician, Dr. Gardner, was not supported by substantial evidence. Id. at 15. Plaintiff contends the opinions of Dr. Burgess and Dr. Gardner are not reliable because they suffer from the same flaw: they "did not review the lumbar spine MRI taken in 2010, or the lumbar X-ray taken in 2008, or the X-ray showing the thoracic curvature in 2007, each showing unique degenerative changes all along the lumbar spine and a static pain thoracic condition." Id. (no citation to evidence provided by Plaintiff).

Defendant asserts that the imaging studies cited by Plaintiff document mild or minimal findings, and in the case of the x-rays explain there is no evidence of acute abnormality or disease. (Document No. 12-1, p.13) (citing Tr. 264, 378, 413). Defendant argues that these imaging studies do not, therefore, "corroborate assertions of more restrictive limitations." Id. Further, Defendant disagrees with Plaintiff's assumption that Dr. Burgess did not see the MRI report. Id. (citing Tr. 277) ("Back problems on MRI appeared to be milder than symptoms would indicate.").

In addition, Defendant notes that although the ALJ gave some weight to the State agency medical consultants Sankar Kumar, M.D. ("Dr. Kumar") and Robert Gardner, M.D. ("Dr. Gardner"), the ALJ found Plaintiff to be *more limited* than these consultants did. (Document No. 12-1, p.14) (citing Tr. 21, 69-70, 85-87). Defendant contends that the ALJ considered Plaintiff's subjective complaints and reduced the RFC to light exertion, and included additional restrictions for postural activities. Id. (citing Tr. 21).

2. Psychological Opinion Evidence

13

Plaintiff is also critical of the weight given to the psychological opinions. (Document No. 9-1, pp.16-20). In part, Plaintiff contends that the ALJ erred by assigning only "some" weight to the opinion of Steven Wallenius, M.D. ("Dr. Wallenius"), instead of "controlling weight." Id. at 17. Defendant, however, counters that it is not clear from the record that Dr. Wallenius "was genuinely a treating source rather than an examining source, and therefore it is not clear that his report can be given controlling weight." (Document No. 12-1, p.16).[4]

Defendant goes on to persuasively argue that even if Dr. Wallenius was a "treating source," the ALJ relied on substantial evidence that is inconsistent with Dr. Wallenius' report, and would thus preclude giving Wallenius' opinion controlling weight. Id. (citing Tr. 21-22). "Moreover, Dr. Wallenius did not opine that Plaintiff was disabled, or that he would be incapable of performing work-like activities . . . it is not even clear that according this opinion controlling weight – to the extent it is possible – would even compel a finding of disability." (Document No. 12-1, pp.16-17).

Next, Plaintiff suggests the ALJ erred because he "credited the opinion [of Jan. Richardson, M.A.] for the portion indicating the Plaintiff is 'capable of understanding and following simple instruction,' and then failed to address the remainder of the opinion with respect to weight." (Document No. 9-1, p.18).

The undersigned observes that the ALJ specifically opined as follows:

> The undersigned assigns great weight to the opinion of Jan H. Richardson, consultative psychological examiner, in the determination that the claimant is capable of understanding and following simple instruction. The examiner noted that the claimant maintained appropriate attention and concentration in order to perform simple, repetitive task for short periods of time. He could

---

[4] The undersigned observes regarding this point, as well as other issues in Defendant's brief, that Plaintiff has declined the opportunity to file a response/reply brief to address issues raised for the first time by the Commissioner. See (Document Nos. 14 and 14).

> possibly experience problems relating to fellow workers and supervisors on a daily basis due to his reported academic delays and depression, as well as his physical problems relating to his back pain. He did **not** demonstrate poor tolerance in managing the stress and pressure associated with a work routine, specifically a part time job. He is capable of managing his personal, financial and business affairs. These findings are supported by the examiner's evaluation, the claimant's activities of daily living and with the medical evidence in its entirety (Exhibit 13F).

(Tr. 21).

Defendant first notes that Michael Fiore, Ph.D. ("Dr. Fiore") and Ms. Richardson co-signed the opinion in question. (Document No. 12-1, p.18) (citing Tr. 295-299). Defendant disagrees that the ALJ's weight assessment was limited to understanding and remembering simple instructions. Defendant further asserts that the ALJ properly credited Plaintiff's possible social interaction problems by restricting the RFC to occasional interaction with the public. (Document No. 12-1, p.19); see also (Tr. 15). Defendant also contends that although Ms. Richardson did not perform a mental status evaluation, the opinion is supported by her observations of Plaintiff's behavior and the administration of intelligence testing. (Document No. 12-1, p.20).

Plaintiff also seems to suggest the ALJ improperly weighed the opinions of the State agency psychological medical consultants, although the alleged error is not fully explained. (Document No. 9-1, p.19). Nevertheless, Defendant provides an effective explanation of the support for the opinions of Jennifer Fulmer, Ph.D. and Keith Noles, Ph.D., as incorporated by the ALJ's decision. (Document No. 12-1, p.21) (citing Tr. 21).

The weight given the opinion of Don Salmon, Ph.D. ("Dr. Salmon") is also challenged by Plaintiff. (Document No. 9-1, pp.19-20). In particular, Plaintiff contends that the ALJ erroneously assigned both "little" and "no" weight to the opinion of Dr. Salmon. Id. Plaintiff

further contends that the ALJ misapplied the regulations by noting that Dr. Salmon's opinion was "validated" by the medical evidence. (Document No. 9-1, p.20).

Defendant argues that the material consideration here is that it is clear the ALJ discounted Salmon's opinion and found it unpersuasive. (Document No. 12-1, p.22). "The ALJ discounted this opinion, because it was based on subjective assertions without the benefit of a treating relationship; because his conclusions were not validated by the medical evidence; and because the opinion was not in an attempt to seek treatment but in an effort to generate evidence for the present appeal." (Document No. 12-1, p.22) (citing Tr. 22). Defendant argues that there is no evidence that the ALJ's use of the word "validation" indicates he meant to apply a higher standard of evidentiary proof. Id. at 23. Moreover, Defendant asserts that substantial evidence supports the ALJ's conclusion that Dr. Salmon's opinion is *not* consistent with the record generally. Id. "By way of example, Dr. Salmon's opinion of marked restrictions in all functional areas is manifestly inconsistent with the report provided by Dr. Wallenius of WNCHHS, who observed unimpaired memory, judgment, and thought process and content." Id. (citing Tr. 290).

3. Lay Witness Opinion

Finally, Plaintiff concludes that the ALJ "applied improperly restrictive standards in considering the testimony of Ms. Frances Earnhardt, the Plaintiff's case manager." (Document No. 9-1, p.20). Plaintiff also suggests the ALJ improperly dismissed the statement of Sarah Eaton. Id. at 21.

Again, the undersigned finds that Defendant provides a more than adequate rebuttal to Plaintiff's argument here. (Document No. 12-1, pp.23-24). Most importantly, the undersigned

finds that the ALJ provided an adequate explanation of his consideration of the testimony of Ms. Earnhardt, as well as the statement of Ms. Eaton. (Tr. 22).

Based on the foregoing, the undersigned is persuaded that Plaintiff's multiple alleged errors regarding the opinion evidence are without merit.

**D.     Literacy**

Next, Plaintiff alleges that the ALJ's findings related to literacy and the ability to follow simple instructions were not based on substantial evidence. (Document No. 9-1, pp.22-23). Plaintiff states that "Plaintiff's illiteracy currently impairs him vocationally enough that, with no change other than the passage of years, he would be disabled by regulation at age 50" and thus, in "just seven years . . . the Grids would direct a finding of disability." (Document No. 9-1, p.23).

Notably, it appears the ALJ's findings regarding literacy, at least in part, were directed by the Plaintiff's testimony. (Tr. 22).

> The claimant testified that he is unable to read or write. The claimant received resource services through the Special Education program and was shown to have learning disabilities. Provisions have thus been incorporated within the residual functional capacity wherein the **claimant is limited to jobs that do not require literacy**.

(Tr. 22) (emphasis added). Moreover, Plaintiff does not appear to specifically allege that his illiteracy or ability to follow simple instructions, preclude him from performing the occupations identified by the VE. See (Document No. 9-1, pp.22-23; Tr. 23).

Defendant notes that "the ALJ specifically included an RFC provision that Plaintiff could only perform jobs that do not require literacy." (Document No. 12-1, p.24) (citing Tr. 15). Defendant further argues that "the fact that Plaintiff identifies a medical-vocational rule that would direct a finding of "disabled" for one who is illiterate, "closely approaching advanced

17

age," and limited to light, unskilled work is immaterial, as by Plaintiff's own admission this age category is seven years beyond his own, and it is not the applicable medical-vocational rule. Id. Defendant also asserts that "Plaintiff has not shown how the outcome could have been expected to be different and therefore attendant harm, and has thus shown no reason for a remand." (Document No. 12-1, p.25) (citing Shinseki, 556 U.S. at 409).

The undersigned finds Defendant's arguments to be compelling.

### E. RFC Capacity

Plaintiff's final alleged error is that the ALJ's assessment of RFC did not follow applicable law and was not supported by substantial evidence. (Document No. 9-1, p.24). The crux of Plaintiff's allegation is that "the ALJ's weighing of each medical opinion, and rejection of the treating provider opinion, was in error." Id.

Defendant alleges that "Plaintiff's fifth argument is essentially a way of reframing his arguments in the previous four sections, [and] his ability to succeed here is predicated upon his success in these other arguments." (Document No. 12-1, p.25). Defendant argues that further discussion here is unwarranted, relying on previous sections of his memorandum. Id.

It also appears to the undersigned that Plaintiff's last argument lacks anything new requiring further analysis. Although Plaintiff clearly disagrees, the undersigned finds that the ALJ's decision is thorough and consistent with the record as a whole.

### IV. CONCLUSION

Most, if not all, of Plaintiff's pending motion and memorandum essentially asks the Court to re-weigh the evidence before the ALJ, rather than effectively identifying a lack of

18

evidence supporting the ALJ's decision, or the application of incorrect legal standards. As noted above, however, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (4th Cir. 1990). The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 9) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections

on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: September 15, 2014

David C. Keesler
United States Magistrate Judge